IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

|   |   |   |
|---|---|---|
| ROBERT EARL DANIELS, SR. | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| VS. | * | NO: 5:06CV00213   SWW |
| | * | |
| WASHINGTON GROUP | * | |
| INTERNATIONAL AND GREGG | * | |
| THOMASSON | * | |
| | * | |
| Defendants | * | |

**ORDER**

Plaintiff Robert Earl Daniels, Sr. ("Daniels") brings this employment discrimination action against his former employer, Washington Group International ("Washington Group"), and Washington Group employee Gregg Thomasson ("Thomasson").  Before the Court is Washington Group's motion for summary judgment (docket entries #76, #77, #78), Daniels' response in opposition (docket entries #80, #84, #85, #86), and Washington Group's reply (docket entry #88).  After careful consideration, and for the reasons that follow, the motion will be granted, and this action will be dismissed.

**I.**

The following facts are undisputed.  Defendant Washington Group is under contract with the United States Department of Defense to destroy chemical weapons located at the Pine Bluff Arsenal.  Defendant Thomasson works for Washington Group in a management position, and Plaintiff Daniels, who is black, worked for Washington Group as an emergency preparedness manager from July 2002 until October 2003.

In May 2003, Daniels filed a discrimination charge against Washington Group with Equal Employment Opportunity Commission ("EEOC"), alleging race discrimination. *See* docket entry #78, ¶ 3, docket entry #86, ¶ 3. Additionally, Daniels filed an internal grievance in October 2003, alleging race discrimination. On October 3, 2003, Daniels and Washington Group entered a separation agreement and general release which provided, in part, that if Washington Group received inquiries regarding Daniels' employment, it would state only that his employment ended by mutual agreement. *See* docket entry #76, Ex. #2.

In October 2003, after his separation from Washington Group, Daniels became employed in the material management division of the Pine Bluff Arsenal. In 2005, Daniels applied for a promotion to the position of Director of Material Management at the arsenal. Daniels alleges that his bid for a promotion was unsuccessful because the selection committee received an untruthful and negative statement about him from Thomasson. Daniels claims that Thomasson's negative statement amounted to racial discrimination, retaliation, and a breach of the aforementioned separation agreement.

In his second amended complaint (docket entry #53) Daniels asserts discrimination and retaliation claims against Thomasson under 42 U.S.C. § 1981; discrimination and retaliation claims against Washington Group under Title VII and 42 U.S.C. § 1981; a breach of contract claim against Washington Group under state law;[1] and tort of bad faith and tort of outrage claims under state law against both defendants. By order entered December 6, 2007, the Court

---

[1] In his original complaint, Daniels asserted a breach of contract claim against Thomasson, who is not a party to the contract, and equal protection and due process claims under 42 U.S.C. § 1983. By order entered January 5, 2007, the Court dismissed these claims. *See* docket entry #46.

dismissed Daniels' bad faith claims. Defendants now move for summary judgment on the remaining claims.

**II.**

Retaliation

The elements of a retaliation claim under Title VII and § 1981 are the same. *See Kim v. Nash Finch Co.*, 123 F.3d 1046, 1063 (8th Cir.1997). A plaintiff must show (1) he engaged in protected conduct; (2) a reasonable employee would have found the challenged retaliatory action materially adverse;[2] and (3) the materially adverse action was causally linked to the protected conduct. *See Higgins v. Gonzales,* 481 F.3d 578, 589 (8th Cir. 2007)(citations omitted).

Defendants acknowledge that Daniels engaged in protected activity when he filed a discrimination charge with the EEOC in May 2003 and when he filed an internal discrimination charge in October 2003. *See* docket entry #77, at 10. However, Defendants assert that (1) Daniels cannot show retaliation on the part of Washington Group because Thomasson lacked authority to provide a job reference for Daniels and (2) Daniels presents no evidence showing a causal connection between his protected activities in May and October 2003 and Thomasson's negative job reference in July 2005.

Defendants' first argument is based on the premise that Thomasson's conduct was

---

[2] Until recently, as part of the prima facie case, the Eighth Circuit required plaintiffs to show "an adverse action" which produced a "material employment disadvantage." *See Higgins v. Gonzales,* 481 F.3d 578, 589 (8th Cir. 2007)(citations omitted).

unauthorized and cannot, therefore, be imputed to Washington Group.  Where retaliatory action is carried out by using employer-granted authority, whether actual or apparent, a plaintiff need not show that the employer knew or should have known of the retaliatory conduct in order to establish employer liability.  *See Cross v. Cleaver*, 142 F.3d 1059, 1073 (8th Cir. 1998).  Additionally, a retaliator may be "so high in the employer's hierarchy that . . . the retaliatory conduct would necessarily be imputed to the employer." *Id*. at 1074(citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 72, 106 S. Ct. 2399, 2408 (1986)).

Here, Defendants provide evidence that Thomasson acted outside the scope of his authority when he provided a negative employment reference for Daniels.  Pine Bluff Arsenal employee Ann McGehee participated in the selection process for the position sought by Daniels in 2005.  *See* docket entry #76, Exs. #4, #5.  McGehee testifies by affidavit that she requested a reference for Daniels from Washington Group's human resource department, and "two different ladies" told her that they were not allowed to talk to anyone about Daniels.  Docket entry #76, Ex. #4, ¶ 8.  McGehee states that she received the same response when she contacted the specific department where Daniels had been employed at Washington Group.

McGehee states that after her initial attempts to obtain information failed, she contacted Thomasson.  *Id*.  Thomasson testifies that he had known McGehee personally for many years, and he told her, among other things, that Daniels' department at Washington Group had problems and that Daniels' relationships with his coworkers were strained.  Docket entry #76, Ex. #5, ¶ 9.  In deposition, Thomasson acknowledged that his comments to McGehee were in violation of Washington Group's policy, which required that he refer McGehee to the human resource department.  Docket entry #76, Ex. #6, at 38-39.  Thomasson states that he did not

4

inform Washington Group's human resource department about his conversation with McGehee until after Daniels filed this lawsuit. *Id.*, ¶ 10.

Daniels provides no evidence that Thomasson acted within the scope of his actual or apparent authority when he provided McGehee negative comments about Daniels. In fact, Daniels acknowledges that McGehee "went around" Washington Group's established procedure for providing job references. *See* docket entry #85, ¶ 42. Nor is there evidence that Thomasson was so high in Washington Group's hierarchy that his unauthorized conduct can be imputed to Washington Group. Daniels speculates that Thomasson occasionally acted as a "director" or "plant general manager," *see* docket entry #85, ¶ 9; docket entry #76, Ex. #1, at 47, but he provides no evidence to support this contention. Defendants, on the other hand, submit evidence that Thomasson served as a manager who never had supervisory authority over Daniels, who was also a manager for Washington Group. Docket entry #76, Exs. #11, #6, at 16.

The Court finds, as a matter of law, that Thomasson's conduct cannot be imputed to Washington Group. The Court also agrees that Daniels has failed to show a causal link between his protected activity and Thomasson's negative job reference.

To demonstrate a causal link between his protected activity and adverse action, a plaintiff must present evidence sufficient to create a reasonable inference that a retaliatory motive played a part in the challenged adverse action. *See Henderson v. Ford Motor Co.,* 403 F.3d 1026, 1036 (8th Cir. 2005). Here, the alleged retaliation took place sometime after August 2005,[3]

---

[3]The record contains no information as to the exact date on which Thomasson gave Daniels a negative job reference. However, the Material Management Director position became available after Lawson Love retired from the position on August 21, 2005. *See* docket entry #76, Ex. #3, ¶ 4.

approximately two years after Daniels filed an internal discrimination complaint in October 2003.  Although the extended period of time between Daniels' protected activity and Thomasson's action will not foreclose a retaliation claim, it weakens any inference of retaliation. In a case where only one year passed between the plaintiff's protected activity and adverse employment action, the Eighth Circuit stated: "This passage of time is insufficient to show, and in fact weakens the showing of, the required causal link." *Wallace v. Sparks Health System.* 415 F.3d 853, 859 (8th Cir. 2005).

In an effort to avoid summary judgment, Daniels submits his affidavit in which he claims that soon after he began working for Washington Group in 2001, Thomasson began sabotaging his work and undermining his authority.  Although such information may be useful as background information, it is insufficient to show a causal connection between Daniels' protected activity and the alleged retaliatory conduct.  *See Henderson v. Ford Motor Co.,* 403 F.3d 1026, 1037 (8th Cir. 2005)("Even though a court may use background information as evidence of discrimination to support a timely claim, [the] burden to show a causal connection between a protected activity and the adverse action at issue does not disappear merely because the history between employer and employee is long and contentious.")(internal citation omitted).

After carefully reviewing Daniels' submission, the Court finds no issues for trial with respect to his retaliation claim.

<u>Discrimination</u>

In his second amended complaint, Daniels cites Thomasson's negative job reference as the sole basis for his race discrimination claim.  Because Daniels provides no direct evidence

that Thomasson's conduct was motived by race, he must establish a prima facie case of discrimination by showing that he suffered adverse employment action under circumstances that permit an inference of discrimination. *See Rothmeier v. Investment Advisers, Inc.*, 85 F.3d 1328, 1332 (8th Cir. 1996). Defendants assert that Daniels is unable to make such a showing, and the Court agrees.[4]

One method to raise an inference of discrimination is to show that the plaintiff was treated less favorably than similarly situated employees who are not in the plaintiff's protected class. In an attempt to show disparate treatment, Daniels contrasts the negative job reference he received from Thomasson with post-employment treatment received by other employees. Daniels claims that Washington Group helped two white employees, Chuck Ladd and Don Whinery, find jobs after Washington Group terminated their employment.[5] However, Daniels provides no information showing that he was similarly situated to Ladd and Whinery.

Daniels also asserts that he has "made out a prima facie case of a pattern and practice of conduct of discrimination." In his affidavit, Daniels states: "Immediately after I went to work for Washington Group, Mr. Thomasson engaged in several acts of harassment racial discrimination; specifically he sabotaged my work while I was an employee on several occasions, by interfering in the process to review critical documents by employees under his

---

[4] Defendants also argue that Washington Group cannot be held liable for Thomasson's unauthorized job reference. For the reasons previously explained in connection with Daniels' retaliation claim, the Court agrees that Washington Group cannot be held vicariously liable based on Thomasson's unauthorized actions.

[5] Daniels also claims that Washington Group denied three other black employees the same assistance provided to Ladd and Whinery, but he fails to explain how this allegation is relevant to his individual discrimination claim. *See* docket entry #87, at 20.

direction." Docket entry #83, ¶ 12. Daniels also claims that Thomasson encouraged another employee to file charges against him for violating company policy. See *id.*, ¶ 17.

Self-serving, conclusory testimony that Thomasson "engaged in several acts of discrimination and harassment" during Daniels' employment fails to show a pattern or practice of discrimination, and it fails to support an inference of discrimination with respect to the negative job reference given two years after Daniels' employment ended.[6] After careful consideration, the Court finds that Daniels has failed to create triable issues with respect to his race discrimination claim.

<u>State Claims for Breach of Contract and Outrage</u>

Because the Court finds no issues for trial with respect to Daniels' claims over which this Court has original jurisdiction, those claims will be dismissed, and the Court will dismiss Daniels' supplemental breach of contract and outrage claims, which he brings pursuant to state

---

[6]Normally, a "pattern or practice" disparate treatment claim focuses on group-wide allegations of intentional discrimination. To establish a prima facie pattern-or-practice case, the plaintiffs must show that intentionally discriminatory practices were the defendant's "standard operating procedure," not merely sporadic or isolated occurrences. *See International Broth. of Teamsters v. U.S.*, 431 U.S. 324, 336, 97 S.Ct. 1843, 855 (1977). This method of proof is not applicable to individual disparate treatment claims, which proceed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973). *See Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 356 (5th Cir. 2001); *Lowery v. Circuit City Stores, Inc*., 158 F.3d 742 (4th Cir. 1998), *vacated on other grounds*, 527 U.S. 1031, 119 S.Ct. 2388 (1999).

While pattern-or-practice evidence may be helpful in the context of an individual disparate treatment claim to assist in establishing a prima facie case or show pretext, such evidence, standing alone, would not enable Daniels to establish that Thomasson gave him a negative job reference because of his race. *See Cooper v. Federal Reserve Bank of Richmond*, 476 U.S. 867, 876, 104 S. Ct. 2794, 2799-2800 (1984)("The crucial difference between an individual's claim of discrimination and a class action alleging a general pattern or practice of discrimination is manifest. The inquiry regarding an individual's claim is the reason for a particular employment decision . . . .").

law, without prejudice.   *See* 28 U.S.C. § 1367(c)(3)

### III.

IT IS THEREFORE ORDERED that Defendants' motion for summary judgment (docket entry #76) is GRANTED.  Pursuant to the judgment entered together with this order, Plaintiff's claims pursuant to Title VII and 42 U.S.C. § 1981 are DISMISSED WITH PREJUDICE, and Plaintiff's claims pursuant to state law are DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that all additional pending motions are DENIED AS MOOT.

IT IS SO ORDERED THIS 29TH DAY OF JANUARY, 2008.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE